WHITE LAMB FINLAY, INC. *v.* UNITED STATES

**No. 5016.**—Invoice dated Ghent, Belgium, October 23, 1939.
Certified October 25, 1939.
Entered at New York, November 13, 1939.
Entry No. 750290.

(Decided October 2, 1940)

*James W. Bevans* for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

KINCHELOE, Judge: This appeal to reappraisement involves the determination of the proper dutiable value of certain woven flax paddings imported at the port of New York from Belgium.

The case is before me for decision on the following stipulation of fact entered into by and between counsel for the respective parties:

1. That the merchandise involved in the above-entitled suit, or merchandise similar thereto, was not freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, at the time of exportation of the instant merchandise or subsequent thereto, but was manufactured solely for exportation to the United States, by the manufacturer herein or by other manufacturers of such or similar merchandise.

2. That the merchandise forming the subject matter of this suit or merchandise similar thereto was freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, at the time of exportation of the instant merchandise and subsequent thereto, for future delivery by the exporter herein and by other manufacturers of such or similar merchandise.

3. That the merchandise involved in this suit was purchased by plaintiff on an order dated June 21, 1939, in accordance with which deliveries were to be made during September, October, and November, 1939, at the price of 4.15 Belgian Francs per meter, packed, less 3%.

4. That the merchandise involved in this suit was exported from Belgium on October 25, 1939.

5. That on or about September 20, 1939, the manufacturer of said merchandise had freely offered for sale to all purchasers for exportation to the United States such or similar merchandise for future delivery at 6 Belgian francs, per meter, packed, less 3%.

6. That on September 20, 1939, plaintiff herein placed an order with the said manufacturer for such or similar merchandise at the price of 6 Belgian Francs, per meter, packed, less 3%, for delivery during January, February, and March, 1940.

7. That in the ordinary course of trade such or similar merchandise was not carried in stock by the manufacturer in Belgium of the instant merchandise for spot delivery, and no deliveries had been made of such or similar merchandise by the manufacturer of the instant merchandise at the price of 6 Belgian Francs at the time of exportation of the merchandise involved herein from Belgium, namely, October 25, 1939.

8. That in the ordinary course of trade, such or similar merchandise was not carried in stock by other manufacturers in Belgium of merchandise similar to that imported herein for spot delivery, and no deliveries had been made by other manufacturers of such or similar merchandise at the price of 6 Belgian Francs at the time of exportation of the merchandise involved herein from Belgium, namely, October 25, 1939.

9. That if the invoice price under the order of June 21, 1939, is held to be the export value, for duty purposes, under Section 402 (d) of the Tariff Act of 1930, of the merchandise involved herein, the entered value correctly represents such export value.

10. That if the appraised value, equivalent to the price of the order placed September 20, 1939 is held to be the export value for duty purposes under section 402 (d) of the Tariff Act of 1930 of merchandise involved herein, then the appraised value correctly represents such export value.

Thus the question presented for my determination is whether prices quoted for future manufacture and delivery of merchandise not in existence constitute export value, as such value is defined in section 402 (d) of the Tariff Act of 1930, of merchandise shipped from the foreign country on or after the quotation of such new prices and before any deliveries have been made thereunder; or whether such statutory export value contemplates a value based upon actual deliveries of merchandise, or the value of merchandise available for delivery at the time of price quotation or procurable for reasonable prompt delivery.

Section 402 (d) of the Tariff Act of 1930 defines export value, so far as pertinent to this case, as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, *at the time of exportation of such merchandise to the United States*, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, * * *. [Italics mine.]

It is the contention of plaintiff that the phrase "freely offered for sale," as used in section 402 of the Tariff Act of 1930, refers to merchandise immediately available for delivery or readily obtainable; and that "a price quoted for merchandise to be manufactured and

delivered at some future time is merely an offer to enter into an undertaking to be performed in the future" and does not contemplate a freely offered price within the meaning of the statute.

In his brief counsel for plaintiff has referred to several cases involving the judicial interpretation to be applied to the statutory phrase "freely offered for sale," but in all of said cases the question before the court was whether by the use of such words Congress intended that only sales of a product where title passed should be considered, or whether it was intended to place a broader construction thereon to include offers for sale. The issue herein is entirely different, and therefore in my opinion none of the cases cited by said counsel have any bearing in a proper determination of the instant case.

As conceded by counsel for plaintiff, the sole question herein is whether prices quoted for the manufacture and future delivery of merchandise not in existence at the time such quotations are made create a market value for duty purposes. Proper determination of that issue, in my judgment, lies in the answer to the question: Does such quoted price embrace all of the elements included in the statutory definition of the value forming the basis of appraisement of the merchandise in question? If it does, then such value truly represents the proper dutiable value of the merchandise.

It has been agreed by the parties hereto that the proper basis for appraisement of the instant merchandise is export value. It has been further stipulated that the merchandise in question and similar merchandise was freely offered in the principal markets of the country of exportation in the usual wholesale quantities and in the ordinary course of trade for future delivery; and that in the ordinary course of trade such or similar merchandise was not carried in stock. In other words, it is conceded that the transactions upon which the issue before me is based were bona fide transactions that conformed with the usual practice followed in the ordinary course of trade in dealing with such or similar merchandise, and that met all of the requirements included in the statutory definition of export value as set forth in section 402 (d) of the tariff act.

The case of United States v. Ferdinand Rice et al. (Reap. Dec. 4886) involved the same principle that is presented herein. There, as here, it was established of record that the merchandise was freely offered for sale in the usual wholesale quantities and in the ordinary course of trade at the prevailing market price for future manufacture and delivery. In the cited case there had been a falling market in the commodity in question, and consequently the price at the date of exportation was lower than the purchase price which was made between 30 and 60 days prior to the date of shipment. There, the importer contended that the value at the date of exportation

should prevail. In the present case, as disclosed by the stipulated facts, the market value for the merchandise in question increased between the date of purchase and the date of exportation, and so the claim of the plaintiff herein, as distinguished from that made by the importer in the cited case, is that the price at the date of purchase should control. However, the principle involved in both cases is identical.

In the *Ferdinand Rice* case, Reap. Dec. 4886, *supra*, the court held that the price at the time of shipment governed for duty purposes, and in reaching that conclusion it said that "the value to be used in making entry is the export value of the goods on the date of shipment irrespective of the prices paid for the same. This appears to be a sound principle and in accord with the definition of export value in section 402 (d)."

The conclusion there is equally applicable here, and I so hold. Since the record before me contains nothing to show there had been any change in the price of the merchandise in question between September 20, 1939, the date of the second purchase by plaintiff, and the time of exportation of the instant merchandise, it necessarily follows that the price of said order, is the proper dutiable export value of the merchandise in question.

On the basis of the record before me I find the following facts:

1. That the merchandise in question consists of certain woven flax paddings imported from Belgium.

2. That there was no foreign-market value, as such value is defined in section 402 (c) of the Tariff Act of 1930, for said merchandise at the time of exportation thereof.

3. That the proper basis for appraisement of said merchandise is export value, as such value is defined in section 402 (d), of said tariff act.

4. That such dutiable export value of said merchandise is the appraised value.

I hold as matter of law that the correct dutiable value of the instant merchandise is export value as represented by the appraised value. Judgment will be rendered accordingly.